**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BRETT KENDALL FRY**<br>Petitioner,<br>***v.***<br>**DANIELA VIKTOROVNA FRY**<br>Respondent. | **CIVIL ACTION**<br><br>**No. 26-3469-KSM** |

**MEMORANDUM**

**MARSTON, J.** **August 14, 2026**

On May 26, 2026, Petitioner Brett Kendall Fry initiated the current action by filing a Petition for Return of Minor Children Pursuant to the Hague Convention on the Civil Abduction Remedies Act and the International Child Abduction Remedies Act ("ICARA"). (Doc. No. 1.)[1] Four days later, he filed an Amended Petition. (Doc. No. 11.) Petitioner alleges that his wife, Respondent Daniela Viktorovna Fry, wrongfully removed their children from Germany to Texas on May 30, 2025.[2] (Doc. No. 11.) Now, a year later, Petitioner requests that the Court find that

[1] That same day, Petitioner also filed a Notice of Intent to Raise Issue of Foreign law, "Emergency Motion for Provisional Measures, TRO, Order to Show Cause, and Expedited Hague Return Hearing," a Motion to File Sensitive Exhibits and Supplement Under Seal, an Exhibit, a Declaration by Petitioner, and a "Verified Petition for Return of Children Pursuant to Hague Convention and ICARA." (Doc. Nos. 2, 3, 4, 5, 8, 9).

Relatedly, on April 23, 2025, over a year before filing the instant action, Petitioner filed a SAPCR (Suit Affecting the Parent-Child Relationship) in the 330th District of Texas, Dallas County, No. DF-25-06220 in an attempt to prevent his wife from removing their children from Germany ***or Texas*** without a court order. (*See* Doc. No. 11 at 2.) Based on a review of that docket, it appears the matter was later consolidated into the divorce and custody action, No. DF-25-07823, filed by Respondent on May 29, 2025, also in Texas. (Doc. No. 22-2 at 1.) While the Texas suits were pending, Respondent also filed a divorce and custody action in Montgomery County, Pennsylvania, No. 2026-06670, and moved to dismiss her Texas divorce filing. (*See* Doc. No. 22-3.) These state court actions have been stayed pending this Court's resolution of Petitioner's Hague petition.

[2] Petitioner and his wife have three children. Respondent and the three children returned to Texas on May 30, 2025. Here, Petitioner only seeks a return to Germany for the two younger children, E.G.B.F.

on May 30, 2025, the children's habitual residence was Germany and order their immediate return to Germany. (Doc. No. 11.) However, based on the evidence before the Court, the Court finds that on May 30, 2025, the minor children's habitual residence was the United States. For the reasons discussed below, Petitioner's Amended Petition is denied.

## I. FACTUAL BACKGROUND

Petitioner served in the U.S. Army for approximately 22 years. (Doc. No. 13 at 29.) In early 2025, Petitioner, assigned to the U.S. Africa Command, was stationed and living with his dependents, his wife and three minor children, in Stuttgart, Germany. (Doc. No. 11 at 2.) In the spring of 2025, Petitioner began the process of retiring from the military, effective May 31, 2025.[3] (*Id.*) In preparation for his retirement from the military, on May 5, 2025, Petitioner informed the Stuttgart High School Registrar that his eldest son would likely finish the school year, but that the family was leaving thereafter. (Doc. No. 42-9 at 2 ("We will be leaving, but he most likely will be able to finish out the year.").) On May 20, 2025, U.S. Army personnel completed a Clearing and Travel Arrangements meeting with both Petitioner and his wife in attendance.[4] (Doc. No. 42-4.) During that meeting, Petitioner explained that he planned to leave

(born 2013) and D.A.B.F. (born 2017) because Petitioner recognizes that the third child, A.K.B.F. (born in 2010), is now 16 years old and beyond the reach of the Hague Convention and ICARA. (Doc. No. 11 at 1.) *See* Convention, Art. 4.

[3] Petitioner's retirement paperwork lists place of retirement as Stuttgart, Germany and his home of record ("HOR") as Grand Prairie, Texas. (Doc. No. 13 at 30.)

[4] Although Petitioner has filed many exhibits, he failed to provide the memorandum that summarized what was said at this meeting (the "Army FAP Memorandum"), noting the Court could request it if the Court wanted to see it. (Doc. No. 5 at 19.) Petitioner's Army FAP Memorandum is a memorandum prepared on May 20, 2025 by a Family Advocacy Program Manager for the U.S. Army, to describe the "Clearing and Travel Arrangements" for the Fry Family following Mr. Fry's retirement from the U.S. Army. (Doc. No. 42-4.) The Memorandum provides minutes from the meeting. (*Id.*) Once ordered to provide the document, Petitioner provided a lengthy explanation of why the Court should disregard the memorandum's contents. (Doc. No. 42-1 at 6; Doc. No. 42-2.) The Court finds Petitioner's attempts to discredit this document unpersuasive. This document squarely bears on the question of habitual residence presently before the Court and Petitioner has cited to no authority that states the Court cannot credit an indisputably authentic document such as the Army FAP Memorandum. (Doc. No. 42-4.)

for Texas on May 24, 2025, and needed to ensure his military retirement processing was complete by that date. (*Id.* at 2.)

During the Clearing and Traveling Arrangements Meeting, Respondent requested that the flights for Respondent and the children be arranged for a May 30 return to Texas.[5] (*Id.* at 3.) Although Petitioner suggested his wife and children could stay through the end of the school year, i.e., until June 10, it was explained that their Tri-Care health benefits would move to Texas as of May 25, 2025. (*See id.* ("SFC Fry said that if the children needed more time the school said that the children could stay until June 10th to be able to finish out the school year and that while the Tri-Care benefits would move to Texas on May 25th Ms. Fry and the children would still have access to emergency services here in Stuttgart.").) And, the U.S. Army had already arranged for all of the family's unaccompanied baggage and household goods to be shipped back to the United States. (*Id.*)

During this meeting, Petitioner was insistent on returning to the United States on May 24 for several reasons, including that his grandfather was ill, and that he was supposed to start a new job ***in Texas*** the second week of June and "need[ed] to have time to adjust in Texas before that begins." (Doc. No. 42-4 at 3.) As of May 25, 2025, the Status of Forces Agreement ("SOFA")

---

Moreover, after receiving a copy of the Memorandum back in May 2025, Petitioner sent an email arguing the Memorandum's notes regarding the family vehicle were not accurate but did *not* dispute any of the information related to Respondent and the children's scheduled departure from Germany to Texas on May 30, 2025. (Doc. No. 42-5 at 2.)

[5] The records document a domestic incident between Petitioner and his wife in January 2025 that resulted in Petitioner being housed in the Army barracks. (*See* Doc. No. 22-4 at 5 (stating to Petitioner that "[he] will reside in the designated barracks until further notice").) Following this incident a protective order was in place, and Petitioner was subjected to counseling. (*See id.*) It appears Respondent and the children also began living at least part of the time in hotels. (Doc. No. 42-4 at 3 ("[Military Personnel] offers for him and [his] wife to help [Respondent] transport her belongings to the hotel and offers to arrange transport for [Respondent] and the children to the airport on the 30th [of May]").)

for Petitioner and his dependents expired.[6] (*See* Doc. No. 22-1 at 1.) And on May 30, 2025, Respondent returned to Texas with the children.[7] Subsequently, on or about June 22, 2025, Respondent and the children moved to King of Prussia, Pennsylvania where the children were enrolled in school for the calendar year 2025-2026 and are scheduled to return to school later this month. (*See* Doc. No. 11 at 2; July 24, 2026 Status Hearing Rough Tr. at 16:19–21.)

Petitioner has disclosed that following his retirement from the Army in May 2025 and his return to Texas to help with terminally ill family members, Petitioner was employed in Oklahoma for some period of time, as well as "set up a residency briefly in Poland."[8] (*See* July 24, 2026 Status Hearing Rough Tr. at 7:17–20, 8: 2–5.) In March 2026, Petitioner received a job offer with the U.S. Navy and following completion of his onboarding process will be stationed in Capodichino, Italy. (*See* Doc. No. 42-11 at 21.) Petitioner claims that he has returned to Germany to complete the onboarding process for this new job. (*See* July 24, 2026 Status Hearing Rough Tr. at 4: 20–22; Doc. No. 34 at 4.)

[6] The SOFA governs the legal status for overseas U.S. military and civilian dependents in NATO countries. Respondent provided the Court with a copy of her SOFA Identification Card. (Doc. No. 22-1 at 1.) Because a dependent spouse does not hold an independent SOFA status from their service member spouse, it is clear to the Court that Petitioner's SOFA status also expired on May 25, 2025. *See Status of Forces Agreement: What is it and who is Eligible?*, U.S. Army, https://www.army.mil/article/227245/status_of_forces_agreement_what_is_it_and_who_is_eligible (last visited on August 14, 2026.)

[7] In anticipation of the family's return to the United States upon Petitioner's retirement, Respondent obtained counsel and filed for divorce in Dallas County, Texas on May 29, 2025. (Doc. No. 22-2 at 1.)

[8] Throughout his filings, Petitioner asserts that he was the leading candidate for jobs in Europe. However, these facts do not bear on the issue before the Court which is only focused on the habitual residence of the children on May 30, 2025, the day of their pre-arranged and agreed upon departure back to the United States. At this time, Petitioner had a job lined up in Texas, commencing in June. (Doc. No. 42-4 at 3 ("his new job [starts] the second week of June [and he] needs to have time to adjust in Texas before that begins.").

## II. PROCEDURAL HISTORY

Petitioner initiated this action on May 26, 2026 and filed an Amended Petition four days later on May 30, 2026. (Doc. Nos. 1, 11.) After filing the instant action, Petitioner failed to effect service of his Petition on Respondent for multiple weeks. Despite the lack of proper service, defense counsel entered her appearance on behalf of Respondent, on July 17, 2026. (Doc. No. 18.) The Court immediately scheduled a status hearing for July 22, 2026. (Doc. No. 16.) But Petitioner filed an Emergency Motion to Continue the Status Hearing (Doc. No. 17), stating he was scheduled to appear in court in Texas on the same day. The Court continued the hearing to July 27, 2026. (Doc. No. 19.)

On July 24, 2026—one week after the Court rescheduled the hearing and three days before it was set to occur—Petitioner filed another "emergency" motion to continue the status hearing or permit remote appearance. (Doc. No. 21.) The Court held a remote hearing the same day to address Petitioner's "emergency" motion. (Doc. No. 25.) During the hearing, the Court scheduled an evidentiary hearing for September 3, 2026. (Doc. No. 26.) A few days after the hearing, on August 4, 2026, the Court issued an Amended Order rescheduling the evidentiary hearing to August 28, 2026, to avoid the minor children having to be excused from school in Pennsylvania, where they currently reside.[9] (Doc. No. 27 at 1.) At that time, Petitioner filed a Motion for Leave to Appear and Testify by Contemporaneous Video Transmission (Doc. No. 31), which the Court denied. (Doc. No. 33.)

Since Petitioner first filed his Petition, he has also filed numerous documents labeled "Exhibits" which he has submitted to the Court in support of his argument that Germany was the

[9] The children's school district's first day of school is Monday, August 31, 2026. (*See* July 24, 2026 Status Hearing Rough Tr. at 16:19–21.)

children's habitual residence when they were allegedly wrongfully removed on May 30, 2025. (*See, e.g.*, Doc. Nos. 5, 13.) As noted earlier, *see supra* n.4, in two of these filings, Petitioner stated that his Army FAP Memorandum was "Not Filed at this Time" and would only be provided at the request of the Court. (Doc. No. 4 at 2; Doc. No. 5 at 19). In an effort to resolve this Petition in an expeditious manner and ensure all of the relevant facts are before the Court, on August 12, 2026, the Court ordered Petitioner to immediately provide his Army FAP Memorandum. (Doc. No. 39.) In compliance with the Court's Order, on August 13, 2026, Petitioner filed a "Notice of Full Compliance with ECF No. 39 and Expedited Motion to Maintain All Supporting Documents Under Seal." (Doc. No. 42.)

The Court has reviewed these documents, which bear on the question of the children's "habitual residence." Because the Supreme Court directs district courts that they "can and should take steps to decide [Hague Convention] cases as expeditiously as possible" the Court finds that this matter is now ripe for resolution without the need for an evidentiary hearing.[10] *Chafin v. Chafin*, 568 U.S. 165, 133 (2013).

[10] This Court joins additional courts that have decided the merits of Hague Convention and ICARA petitions without holding an evidentiary hearing. *See March v. Levine*, 249 F.3d 462, 475 (6th Cir. 2001) ("[G]iven the nature of [the Hague Convention and ICARA], we hold that the district court did not abuse its discretion when it granted summary judgment in favor of March prior to discovery or an evidentiary hearing."); *Pope ex rel. T.H.L.-P. v. Lunday*, 835 F. App'x 968, 973 (10th Cir. 2020) ("Neither the [Hague] Convention nor ICARA, nor any other law of which we are aware including the Due Process Clause of the Fifth Amendment require that discovery be allowed or that an evidentiary hearing be conducted as a matter of right in cases arising under the Convention." (quoting *West v. Dobrev*, 735 F.3d 921, 929 (10th Cir. 2013))). In both of these cases, the Courts rulings rested on the Convention's insistence on expedient resolutions of Hague Petitions and the voluminous amount of information and documents that had been submitted to the District Court, such that the losing party in each case had been afforded a meaningful opportunity to be heard. *See March*, 249 F.3d at 474 ("[T]he treaty requires not only expeditious action by courts under article 11, as the district court properly noted, but use of "the most expeditious procedures available."); *Pope ex rel. T.H.L.-P. v. Lunday,* 835 Fed. App'x at 972 ("[A] meaningful opportunity to be heard . . . is all due process requires in the context of a Hague Convention petition.") Similarly, here, the Court finds that evidentiary record consists of several hundred pages of documents and exhibits filed by Petitioner that now allows the Court to rule and resolve this matter expeditiously and in accordance with a fulsome, undisputed evidentiary record.

## III. LEGAL STANDARD

The Hague Convention has "two main purposes": (1) "to ensure the prompt return of children to the state of their habitual residence when they have been wrongfully removed," and (2) "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." *Karkkainen v. Kovalchuk*, 445 F.3d 280, 287 (3d Cir. 2006) (quoting Hague Convention, pmbl. & art. 1). "The Convention's procedures are not designed to settle international custody disputes, but rather to restore the status quo prior to any wrongful removal or retention, and to deter parents from engaging in international forum shopping in custody cases." *Id.* (citing *Baxter v. Baxter,* 423 F.3d 363, 367 (3d Cir. 2005)). Any person seeking the return of a child who is present in the United States may commence a civil action under the Convention by filing a petition in a court of the jurisdiction in which the child is located. 42 U.S.C. § 11603(b).

To obtain an order for a child's return, the petitioner bears the burden of proving by a preponderance of the evidence that the removal or retention was wrongful under Article 3 of the Convention. 42 U.S.C. § 11603(e)(1)(A). This showing "typically raise[s] four issues for analysis: when the removal or retention at issue occurred, the country in which the child was habitually resident prior to the removal or retention, whether the removal or retention breached the custody rights of the petitioner, and whether the petitioner was exercising those custody rights at the time of the removal or retention." *Baxter*, 423 F.3d 363, 368 (3d Cir. 2005). Only if "the court finds wrongful removal or retention" does the burden "shift[] to the respondent to prove an affirmative defense to the return of the child to the country of habitual residence under article 13 of the Convention." *Baxter*, 423 F.3d at 368.

Here, the Court's analysis begins and ends with a determination of the two minor children's habitual residence immediately before the alleged wrongful removal or retention.

*Kovalchuk*, 445 F.3d at 288 (describing this as a "threshold question in deciding a case under the Hague Convention") (citing *Feder v. Evans–Feder,* 63 F.3d 217, 222 (3d Cir.1995)). As the Supreme Court has stated, habitual residence depends on the totality of the circumstances and asks, in substance, where each child was "at home" immediately before the challenged removal or retention. *Monasky v. Taglieri*, 589 U.S. 68, 77–80 (2020). Critically, "the Convention does not define 'habitual residence,' but, as the Convention's text and explanatory report indicate, a child habitually resides where he or she is at home. This fact-driven inquiry must be 'sensitive to the unique circumstances of the case and informed by common sense.'" *Id.* at 68 (quoting *Redmond v. Redmond*, 724 F.3d 729, 744 (7th Cir. 2013).) Furthermore, "[a]cclimation of older children and the intentions and circumstances of caregiving parents are relevant considerations, but no single fact is dispositive across all cases." *Id.*

## IV. DISCUSSION

Petitioner alleges that upon his retirement from the U.S. Army, his wife, Respondent, wrongfully removed their two minor children on May 30, 2025, from Germany to Texas, without his consent and without any German court order authorizing relocation.[11] (Doc. No. 11 at 1.) Petitioner asserts that Germany was his children's country of habitual residence at the time of their removal from Germany. (*Id.*) In the alternative, Petitioner alleges wrongful retention, namely, that his wife "wrongfully retained the children outside Germany no later than the date she refused Petitioner's repeated demands to the return the children to Germany." (*Id.* at 2.)

[11] Petitioner also alleges that Respondent further moved the children to Pennsylvania on or about June 22, 2025 without his consent. (Doc. No. 11 at 2.) But whether Respondent moved the children to Pennsylvania, and whether it was authorized, are not questions before this Court. The only inquiry the Court must resolve in this action is the habitual residence of the minor children on May 30, 2025 because any alleged movement from Texas to Pennsylvania would be interstate and thus not covered by the Hague Convention or ICARA. *See Kovalchuk*, 445 F.3d at 288.

Petitioner states that he "did not agree to, acquiesce in, or consent to the children's departure from Germany." (*Id.*)

The Court finds Petitioner's claims meritless and has grave concerns that Petitioner is using the Hague Convention to delay and obstruct the divorce and custody proceedings that have been initiated in state court and been ongoing for more than a year. (*See* Doc. No. 22-2 at 1 ("Case Type: Divorce with children" and "File Date: 5/29/2025") (capitalization omitted).) The record shows that Petitioner agreed that his wife and children would be leaving Germany and returning to Texas in May 2025. (*See e.g.,* Doc. No. 42-4.) Petitioner understood that his wife and children were living in a hotel and only had reservations through May 30, 2025. (*Id.* at 4 (noting that Respondent and the children "would be evicted from the installation" after May 30); Doc. No. 42-7 at 2 ("My wife can stay on post as per my understanding until 30 May, but |would advise she leave before that so I can clear housing as required."; Doc. No. 42-8 at 3 ("Lodging from 22 May 2025 to 30 May 2025 has been booked").) In fact, Petitioner was unwilling to change his own travel plans back to the United States to help his wife and three children with their departure. (Doc. No. 42-4 at 3 ("[The U.S. Army Representative] asked if there is any possibility for SFC Fry to stay here a little bit longer so Ms. Fry and her three children would not have to live in a hotel room for an extended amount of time.").) Petitioner knew that his wife had to return the rental car she was using no later than May 24, 2025, in order for his own processing paperwork to be completed by the military to ensure he was able to depart for Texas. (*Id.* at 3 ("VAT forms cannot be turned in until the rental car Ms. Fry is using to get around is returned.").) Petitioner himself explained that the family's Tri-care benefits would be transferred to Texas as of May 25, 2025. (*Id.* ("SFC Fry said that if the children needed more time the school said that the children could stay until June 10th to be able to finish out the school

year and that while the Tri-Care benefits would move to Texas on May 25th Ms. Fry and the children would still have access to emergency services here in Stuttgart.”).) Further, Petitioner arranged for the military to ship the family’s household goods and unaccompanied baggage back to Texas. (*Id.* (SFC Fry explains why he cannot delay his return to Texas to help with Respondent and the children’s return noting that “the unaccompanied baggage and the household goods have already been shipped to the states, he has eight days to pick up these shipments”).) And Petitioner himself notified his son’s high school that his son would not be returning the following school year. (Doc. No. 42-9 at 2 “We will be leaving, but he most likely will be able to finish out the year.”).) Critically, Petitioner himself was determined to return to Texas without any delay. (Doc. No. 42-4 at 3 (“SCF Fry explains that his grandfather is very ill, and he needs to return home and that he also starts his new job the second week of June and needs to have time to adjust in Texas before that begins.”)). With his retirement effective May 31, 2025, Petitioner consented to the travel arrangements for his wife and children to return to the United States on May 30, 2025.

In short, the extensive evidence on the record is undisputed: when the children left Germany on May 30, 2025, ***no one in the Fry family*** was able to continue residing in Germany and they ***all*** intended to relocate to the United States.[12] For these reasons, the Court finds that

[12] Although Petitioner argues that he actually did intend to continue residing in Germany after May 2025, and submits a declaration on that point, nothing in that declaration or the remainder of the record shows that he, or more importantly, the two minor children, were able to remain in Germany after May 2025. (*See* Doc. No. 42-2, Petitioner’s declaration at 3–4 (asserting that he had “two active Europe-based employment candidacies” but conceding that he did not have “two final firm offers before May 30” or that he otherwise could have continued residing in Europe).) Even if Petitioner was pursuing civilian jobs in Europe at that time, he does not deny that he was retired from the Army as of the end of May 2025, had relocated to Texas, and intended to reside there at least until he was offered new employment abroad. Finally, the Court emphasizes that even if this were evidence that Petitioner intended to continue residing abroad, it does not support a finding that *the children*’s habitual residence was Germany as of May 2025. Accordingly, the Court does not credit Petitioner’s self-serving declaration that attempts to contradict the explicit documentary record before this Court.

the habitual residence of the minor children on May 30, 2025, was the United States. The Court reaches this decision "sensitive to the unique circumstances of the case and informed by common sense." *Monasky*, 589 U.S. at 68 (internal citation omitted).

## V. CONCLUSION

For the reasons discussed above, Petitioner's Amended Petition (Doc. No. 11) is denied. An Accompanying Order follows.